DETROIT FIRE FIGHTERS ASSOCIATION, LOCAL 334, IAFF, AFL–CIO; Earl Berry, Andrew Dempsey, Emilio Carlesimo, John Chakan, Archie Warde, Thomas McInchak, John Reardon, Julius Wells, James Archibald, Robert English, Billie Nunnery, and Mark Carpenter, Plaintiffs,

v.

CITY OF DETROIT, a municipal corporation, and Melvin Jefferson, Fire Commissioner, City of Detroit, Defendants.

Civ. No. 80–74010.

United States District Court, E. D. Michigan, S. D.

Jan. 28, 1981.

Theodore Sachs, Detroit, Mich., for plaintiffs.

James Zeman, Detroit, Mich., for defendants.

## MEMORANDUM RE PRELIMINARY INJUNCTION

THORNTON, Senior District Judge.

This Court issued a temporary restraining order December 23, 1980 and on January 7, 1981 held a hearing at which testimony was taken for the purpose of determining whether a preliminary injunction should issue. Subsequent to said hearing an Order Continuing Restraining Order was entered, "pending the further Order of the Court." The parties have submitted briefs in support of their respective contentions and on January 21, 1981 filed a STIPULATION in which they stipulated to certain relevant facts. For the purpose of presenting the background of this controversy we set forth said STIPULATION in its entirety.

## STIPULATION

NOW COME the parties to this case and stipulate to the following facts while reserving whatever objections as to materiality and evidence they may have:

1. Plaintiff Detroit Fire Fighters Association, Local 334, IAFF, AFL–CIO, is a Michigan non-profit corporation with offices in the City of Detroit, Wayne County, Michigan, and is the recognized exclusive bargaining representative of employees of the Detroit Fire Department with respect to wages, hours, and all other terms and conditions of employment. Plaintiff Earl Berry is the President of Plaintiff Union, an employee of the Detroit Fire Department, and a member of the bargaining unit.

2. Defendant City of Detroit is a municipal corporation in Wayne County, Michigan. Defendant Melvin Jefferson is the Executive Fire Commissioner of the City of Detroit with general administrative responsibility for the Fire Department pursuant to the City Charter.

3. On or about April 10, 1980, Defendant City of Detroit and Plaintiff Union entered into a collective bargaining agreement effective July 1, 1977, expiring June 30, 1980, setting forth, *inter alia*, wages, hours, and other terms and conditions of employment for employees of the Detroit Fire Department who are members of the collective bargaining unit represented by Plaintiff Union.

4. On or about June 4, 1980, the Detroit City Council passed a resolution which proposed an amendment of the Charter of the City of Detroit, § 7–806, which section establishes the method of promotion for fire fighter employees of the Detroit Fire Department. Said resolution was submitted to the registered electors of the City of Detroit as a part of the ballot in the general election of November 4, 1980.

5. Plaintiff Union and Earl Berry have contested the legality of the proposed submission on several grounds in a Complaint filed in the Circuit Court for the County of Wayne, Civil Action No. 80–033722–CL, in which Plaintiffs sought unsuccessfully to prevent the submission of the proposed resolution to the electors on the ground that the submission was unfair, misleading, and otherwise in violation of State law. No final adjudication of the merits of that action has been reached.

6. The Union, upon a majority vote of its members, thereupon began a publicity campaign in opposition to the proposal. Featured in the fire fighters' campaign were a television advertisement and a display advertisement which appeared in local newspapers. In the television advertisement, several fire fighters appeared wearing some article of their official uniforms while being identified by name as employees of the Detroit Fire Department. In the newspaper advertisement, a fire fighter appeared in a fire helmet and coat without further identification. In both cases, the fire fighters and the Union endeavored to persuade the reader or viewer to adopt their position on the proposal based on the fire fighter's expertise and experience.

7. Civic organizations such as New Detroit, Inc., with the cooperation of the City of Detroit, also conducted a campaign in support of the proposal prior to the election. In this campaign Defendant Melvin Jefferson appeared in television and radio advertisements paid for with private funds, while identified as the Fire Commissioner of the City of Detroit, urging the adoption of the proposal. In addition, Coleman A. Young, in his capacity as Mayor of the City of Detroit, members of the City Council, and the Fire Department also publicly supported the proposal.

8. Following the start of the Union's campaign, Defendant Jefferson sent a letter to Plaintiff Berry in which he stated, *inter alia*, that the appearances of the individual fire fighters in partial uniform constituted a violation of the department's Policy Directive XII.

9. An employee of the Detroit Fire Department, Lieutenant Gerald Stesiak, requested permission from the Executive Fire Commissioner to wear his official uniform while appearing on a local television news segment. Permission was denied. Lieutenant Stesiak later appeared in civilian clothes and spoke in support of the proposal.

10. Previous versions of the Rule in Policy Directive XII have appeared in both the 1937 and 1953 versions of the Fire Department Rules and Regulations. Fire fighters have appeared in uniform while off-duty in connection with events such as the annual Firemen's Field Day (including ticket sales), funerals, weddings, public relations appearances before school and homeowner groups in connection with the fire safety program, and appearances of the recently-disbanded Departmental Band.

11. Following the election of November 4, 1980, disciplinary proceedings were instituted against the following fire fighters based on the acts alleged:

| MEMBER | OFFENSE | DISCIPLINE–DATES |
| --- | --- | --- |
| Lt. Andrew Dempsey | Television Ad (Shirt, Tie, Hat, Badge) | Two-Day suspension 12/9 and 12/11 |
| Sgt. Emilio Carlesimo | Television Ad (Shirt, Tie, Badge) | Two-Day suspension 12/18 and 12/20 |
| Sgt. John Chakan | Television Ad (Helmet, Coat) | Two-Day suspension 12/21 and 12/23 |
| Sgt. Archie Warde | Television Ad (Shirt, Tie) | Two-Day suspension 12/18 and 12/22 |
| FF Thomas McInchak | Television Ad (Shirt, Tie, Hat) | 12-Hour suspension 12/22 |

| MEMBER | OFFENSE | DISCIPLINE–DATES |
|---|---|---|
| FF John Reardon | Television Ad (Helmet) | 12-Hour suspension 12/11 |
| FF Julius Wells | Television Ad (Shirt, Hat) Print Ad (Coat, Helmet) | 12-Hour suspension " " " 12/10 |
| FF James Archibald | Attending Polls (Jacket) | 12-Hour suspension 12/8 |
| FF Robert English | Attending Polls (Hat, Badge) | 12-Hour suspension 12/12 |
| FF Billie Nunnery | Attending Polls ("Sanfor-ized" Uniform, Jacket) | 12-Hour suspension 12/12 |
| FF Mark Carpenter | Attending Polls ("Sanfor-ized" Uniform, Jacket) | 12-Hour suspension 12/9 |
| FF Larry Miles | Attending Polls (Hat, Badge) | 12-Hour suspension 12/9 |

On December 2, 3, and 4, 1980, the Department held individual Trial Boards for each, wherein all admitted to wearing their uniforms. Each read a statement to that effect. Pursuant to Department Rules, all were found to have violated the Policy Directive and were given either a 12-hour suspension or a two-day suspension without pay. At the time the Court herein issued the temporary restraining order in this matter, Union members Archibald, Nunnery, English, Carpenter, Dempsey and Miles had all served their suspension. Union member Wells was in the process of serving his, Union members Ward and Carlesimo were in the process of serving the first day of their respective suspensions and members Chakan, Reardon, and McInchak had yet to serve any of their time. No member of the Union, nor the Union itself, ever made a written or oral request for special permission of the Fire Commissioner to wear the uniform of the department.

12. Of the twelve fire fighters disciplined, fire fighter Larry Miles was disciplined for appearing in uniform without permission at voting places urging the adoption of the proposal; all other fire fighters were disciplined as a result of their efforts in opposition to the proposal.

13. Fire fighters who have served all or part of their suspension periods prior to the issuance of the temporary restraining order in this case have been made whole by their Union with respect to any loss of wages they may have suffered.

14. In a suit unrelated to this action, certain members of the Union who disagreed with the special assessment voted by the majority to fund the Union's publicity campaign obtained a temporary restraining order in state court restraining the Union from collecting the assessment from Union members who opposed the majority's position.

15. Uniforms are purchased by the department, supplied to new members upon arrival, replaced when circumstances require, and collected when the member separates from the department. Failure to turn in any portion of the department-issued uniform upon separation results in a pro rata charge for the item not returned. Fire fighters are individually responsible for the routine, daily maintenance and cleaning of their work and dress uniforms.

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 "to redress the deprivation under color of law of rights secured to

Plaintiffs by the First and Fourteenth Amendments to the Constitution of the United States." At issue is Policy Directive XII, being one of the "Policy Directives" issued from time to time by Defendants and being one which Plaintiffs admittedly violated, certain of the Plaintiffs having been disciplined for such violations. As to the others disciplines are pending, imposition being presently restrained by the Order Continuing Restraining Order of this Court now in effect. Policy Directive XII in relevant part is set forth in Plaintiffs' Amended Complaint as follows:

12, 11 DRESS UNIFORM: Members of the uniform force shall wear the dress uniform upon entering the fire station when reporting for duty and when leaving the fire station upon completion of a tour of duty. Members not actually on duty shall not use any part of the uniform for the purpose of identifying themselves as members of the Department. Members not actually on duty shall in no case wear any part of the uniform that is considered Department property for any purpose whatsoever after 1000 hours, without special permission of the Executive Fire Commissioner.

The occasions for the violation of the Dress Uniform directive were appearances by some of the Plaintiffs in a short advertised broadcast over local commercial television stations and by some in a display advertisement printed in local newspapers. Said Plaintiffs stated in the Amended Complaint that they were in uniform for these appearances. Plaintiff Berry [1] was advised by letter sent to him by Defendant Melvin Jefferson, Fire Commissioner of the City of Detroit, of the violation of the "Department's Official Rule and Policy" by certain Detroit Fire Fighters, thus making them subject to discipline. Page 3 Amended Complaint. The appearances by the Plaintiffs were in furtherance of a campaign to defeat the passage of a resolution which proposed an amendment of the Charter of the City of Detroit pertaining to the meth-

od of promotion for fire fighter employees of the Detroit Fire Department. As a consequence of the violation of the Dress Uniform regulation Departmental Trial Board hearings were held which resulted in the imposition of discipline "consisting of either a 12-hour or a two-day suspension" of the affected members. Page 4 Amended Complaint. In Paragraph 10 of their Amended Complaint Plaintiffs state as follows:

10. The actions of Defendant, their agents, and employees have had, and will continue to have, the effect of chilling, deterring, preventing, and inhibiting the free exercise of Plaintiffs' rights of speech under the First and Fourteenth Amendments to the Constitution of the United States, and as such Defendants have violated Plaintiffs rights under these amendments.

Plaintiffs also allege that their actions are protected by Article I § 5 of the Michigan Constitution of 1963. They further allege as follows in Paragraph 13 of their Amended Complaint:

13. Furthermore, the actions of Plaintiffs in this matter are lawful, protected and concerted activities within the protection of Sections 1 and 9 of the Public Employment Relations Act, 1947 PA 336, as amended, MCLA 423.201, 423.209, and the attempts of Defendants to prohibit and infringe upon the lawful exercise of Plaintiffs' protected, concerted activity are in clear violation of Section 10 of the Public Employment Relations Act, MCLA 423.210.

The real issue here boils down to the question whether the wearing of the uniform comes within the free speech protection of the First Amendment. Does it embody the message Plaintiffs were attempting to convey in a manner that can be likened to the black armbands which the Supreme Court found "protected" in *Tinker v. Des Moines Community School Dist.* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). Defendants here argue that the black arm-

---

[1]. President of the Plaintiff Union and an employee of the Detroit Fire Department.

bands in *Tinker* signified opposition to the Vietnam War instantly. The fire fighters' uniforms had no independent significance pro or con passage of Proposition N.[2] It was not until the fire fighter exercised his right of free speech that it was possible to determine whether he was advocating or opposing the Proposition. Two fire fighters standing side by side in their uniforms may have had completely opposing views with respect to the ballot proposals. The verbal expressions by them, not the uniform, provide the clue to their views. By definition their uniforms are uniform—no distinction vis a vis political persuasion. In *Tinker* the Supreme Court said that the wearing of armbands in the circumstances of that case was "closely akin to 'pure speech' which, we have separately held, is entitled to comprehensive protection under the First Amendment." *Tinker, supra,* 505–506, 89 S.Ct. at 736. Plaintiffs herein do not so much as intimate that they were in any way inhibited from verbal expression of their views. The regulation prohibited the wearing of the uniform without permission except on the occasions stated therein. In their brief[3] at Page 5 Defendants state that the "department has a paramount interest in maintaining the sanctity of the uniform, the public confidence in the individual wearing the uniform and its political neutrality." It will be seen from Paragraph 9 in the Stipulation that permission to wear the uniform on a television news segment was denied a fire fighter who did, subsequently, appear in civilian clothes and did speak in support of the proposal. The Plaintiffs herein who appeared in uniform and spoke in opposition to the proposal never in fact made the required request to wear the uniform. They were clearly in violation of the rule and would also have been in violation had they worn the uniform in the face of a denial of a request, had one been made. The testimony of the Defendants' witness Deputy Fire Chief Marion M. Holland was unequivocally to the effect that there is a kind of sanctity to the uni-

form and what it represents—a service of paramilitary stature. Political neutrality is a concept inherent here.

The matter at hand is the granting or refusing of a preliminary injunction. One of the tests, probability of success on the merits at trial, is not met here as the foregoing establishes. Such probability must be shown. *Garlock v. United Seal* 404 F.2d 256 (6th Cir. 1968). The irreparable injury test is not met either. See *Garlock, supra.* Should Plaintiffs ultimately prevail the suspensions can be countermanded in terms of pay and personnel records. Further, the Court is not convinced that the balancing of injury favors granting the injunction in light of the necessity of enforcing departmental policy. See *Garlock, supra.*

For the above-stated reasons the preliminary injunction sought by Plaintiffs must be DENIED. An Order may be presented accordingly.

---

2. Proposition N being the proposal involved herein.

3. Supplemental Memorandum in Opposition to Preliminary Injunction.