Bernard COADY, Plaintiff–Appellee,

v.

Russell STEIL, Defendant–Appellant.

No. 98–3569.

United States Court of Appeals, Seventh Circuit.

Argued April 14, 1999.

Decided Aug. 11, 1999.

Rehearing Denied Sept. 9, 1999.

James P. Baker (argued), Springfield, IL, for plaintiff-appellee.

Robert M. Rogers (argued), City of Springfield Office of Corporation Counsel, Springfield, IL, for defendant-appellant.

Before COFFEY, FLAUM and EASTERBROOK, Circuit Judges.

FLAUM, Circuit Judge.

Before us is Russell Steil's interlocutory appeal of the district court's denial of his summary judgment motion in a § 1983 suit filed against him by the plaintiff, Bernard Coady. For the reasons set out below, we affirm the district court's decision that Steil is not entitled to summary judgment.

## Facts

The plaintiff has been a firefighter for the Springfield Fire Department ("SFD") since 1978. In 1995, Coady, a Captain in the SFD, was stationed at Firehouse No. 1 (the "Firehouse"), located in downtown Springfield. At that time, Steil was the SFD's Chief. On Saturday, March 18, 1995, before Coady reported for duty at the Firehouse, he parked his car on a sidewalk located to the east of the Firehouse. Between six and nine other members of the department parked their cars there as well that morning. These spots were not SFD property. They were, however, along the route of the Springfield St. Patrick's Day parade, which was held later that day.

The plaintiff, like some of the other firefighters, had a "Curran for Mayor" sign displayed on his car roof in support of the Democratic candidate for mayor of Springfield, Mike Curran. According to the plaintiff, it was not uncommon for other firefighters to have signs or stickers on their personal vehicles supporting Karen Hasara, the Republican candidate for mayor. Chief Steil was no stranger to off-duty political activity—he was a Republican precinct committeeman who openly supported Hasara's candidacy, and allegedly campaigned for a number of other Republican candidates.

Between 10:00 and 10:15 a.m. on March 18, Steil arrived at the Firehouse, and told Coady and the other firemen that they would have to move their cars, even though firefighters had a longstanding practice of parking on the sidewalk. After some discussion, Steil told the plaintiff that if he removed the sign from atop his car, he would not have to re-park it. The plaintiff left the Firehouse building and returned to his automobile to remove the sign from the top of his vehicle, but apparently could not fit it into his trunk, so he put it in the car's back seat. This did not satisfy Steil, so Coady made another attempt to remedy the situation. This effort was also unsatisfactory. The defendant then allegedly took the plaintiff into his office at the back of the Firehouse and cursed at him. Then, according to Coady, the defendant struck him a number of times. Several firefighters saw Coady run from the building with bruises, contusions and lacerations on his face.

Shortly thereafter, the plaintiff filed suit, alleging that Steil's attack was an unlawful retaliation against him for exercising his protected First Amendment rights by supporting a candidate for public office. The defendant moved for summary judgment, contending that: 1) the plaintiff had no protected First Amendment right to speech; 2) even if the plaintiff's speech was protected, the alleged battery was not retaliatory; and 3) the defendant was entitled to qualified immunity because, if the plaintiff had a constitutional right, it was not clearly established on March 18, 1995.

The district court denied the defendant's motion for summary judgment, rejecting all three of his contentions. Particularly important to the court's ruling was that, at least for summary judgment purposes, the plaintiff was not "on duty" as a SFD firefighter when he engaged in the political activity issue. The defendant argued that when Coady parked his car on the sidewalk near the Firehouse he was *de facto* on SFD property, and thus Chief Steil could appropriately order the plaintiff to remove the sign from atop his car.[1] This argument was based on state and municipal ordinances prohibiting civil servants from engaging in political activities while "at work on duty," as well as a SFD ordinance doing the same. *See* 65 ILCS 5/10–1–27.1; Section 36.07(a) Springfield, Illinois Code of Ordinances, as amended (1988); *see also* Springfield Fire Depart-

---

**1.** The defendant concedes that if the plaintiff's version of the altercation is correct, Coady would still have numerous state law remedies.

ment General Order 400 (1977).[2]

The district court, however, found that the issue of whether the plaintiff was on-duty was, at a minimum, hotly contested, and could not be decided at the summary judgment stage. The district court judge noted that no other firefighter testified that Coady asked him to place a sign on his vehicle, and that there was no evidence that Coady put the sign on his own car after his shift had already started. Additionally, the district court found that the defendant could not show that the plaintiff was attempting to assert that the SFD supported Mike Curran, the Democratic candidate, for mayor. Finally, the district court's opinion rejected the defendant's claim that Coady's car was parked on SFD property. After concluding that Coady had not engaged in political activity while on-duty, the district court found that Steil had violated the plaintiff's First Amendment rights, that the battery was in retaliation for the plaintiff's exercise of those rights, and that qualified immunity did not shield the defendant from liability. The defendant filed an interlocutory appeal, raising the same arguments he did below with the exception of the retaliation issue.

### Analysis

#### A.

▉ Because it is relevant to the scope of our inquiry, we must address our jurisdiction over this appeal before analyzing the defendant's arguments. Under 28 U.S.C. § 1291, we have jurisdiction to hear appeals only from "final decisions" of district courts. Given this language, interlocutory appeals are the exception, and not the rule. See *Johnson v. Jones*, 515 U.S. 304, 309, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995); *Rambo v. Daley*, 68 F.3d 203, 205

(7th Cir.1995). A general exception to this rule is that a district court's denial of a motion for summary judgment predicated on a claim of qualified immunity is ordinarily immediately pursuable. *Mitchell v. Forsyth*, 472 U.S. 511, 527, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). There exists, as is often the case, an exception to this exception: "a defendant entitled to invoke a qualified-immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record set forth a 'genuine' issue of material fact for trial." *Johnson*, 515 U.S. at 319–320, 115 S.Ct. 2151.

This broad language in *Johnson* is not quite as sweeping as it might seem; the Supreme Court subsequently explained: "*Johnson* surely does not mean that every ... denial of summary judgment [based on a determination that there is an issue of material fact] is nonappealable. *Johnson* held, simply, that determinations of evidentiary sufficiency at summary judgment are not immediately appealable." *Behrens v. Pelletier*, 516 U.S. 299, 313, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996). Thus, while a defendant is not entitled to immediately appeal a district court's determination that a genuine factual dispute exists about a material matter, an interlocutory appeal may properly cover a defendant's assertion that a district court's ruling that a given set of facts shows a violation of "clearly established" law is incorrect. *See id.*; *see also Clash v. Beatty*, 77 F.3d 1045, 1046 (7th Cir.1996). The practical effect of these principles is that while it is appropriate for us to address the district court's analysis of whether the defendant violated a clearly established right held by the plaintiff (and thus is not entitled to quali-

---

**2.** If the plaintiff had engaged in political activity while on duty, and had to challenge the Illinois statute and Springfield ordinance which prohibited him from doing so, he would face a likely insurmountable obstacle in attempting to prove that those laws violated his First Amendment rights. *See United Public Workers of America (C.I.O.) v. Mitchell*,

330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947) (upholding the Hatch Act which restricts many political activities of federal employees); *see also Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) (upholding Oklahoma's "mini-Hatch Act" which imposed similar restrictions on state civil servants).

fied immunity), we do so in the context of accepting the district court's determination that a genuine issue of material fact exists as to whether Coady was engaged in political activity on duty. *See Brewster v. Board of Educ. of Lynwood Unified School Dist.*, 149 F.3d 971, 977 (9th Cir. 1998) (On qualified immunity interlocutory appeal "we simply assume the disputed facts in the light most favorable [to the plaintiff], and then decide whether the [defendants] violated any of [the plaintiff's] clearly established constitutional rights."). To that end, we reject the defendant's repeated entreaties to revisit the question of whether the plaintiff was on-duty when he engaged in political activity, because, even if we had the inclination to do so, we have no jurisdiction to review the district court's finding that a genuine issue of material fact exists on that question.

**B.**

The rule of qualified immunity is familiar: public officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). When a state defendant raises qualified immunity as a defense, the plaintiff has a two-part burden. First, he must show a violation of a federal constitutional right. Second, the plaintiff must establish that the constitutional standards at issue were clearly established at the time the alleged violation occurred. *Kernats v. O'Sullivan*, 35 F.3d 1171, 1176 (7th Cir.1994).

Here the plaintiff has alleged a violation of his First Amendment rights. To determine whether a public employee has a protected First Amendment right, we undertake a two part inquiry, known as the *Connick–Pickering* test. *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Pickering v. Board of Educ. of Twnshp. H.S. Dist. 205*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Kokkinis v. Ivkovich*, 185 F.3d 840, (7th Cir. 1999). First, the court must determine whether the plaintiff's speech addressed a matter of public concern. *See Connick*, 461 U.S. at 147–48, 103 S.Ct. 1684. If it did, the court must then apply the *Pickering* balancing test to determine whether "the interests of the [plaintiff] as a citizen in commenting upon the matters of public concern" are outweighed by "the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees." 391 U.S. at 568, 88 S.Ct. 1731.[3]

Addressing the first prong of the *Connick–Pickering* test, we conclude that the "Curran for Mayor" sign atop Coady's car was political speech, which as the defendant concedes, clearly fits the definition of "a matter of public concern." *See Connick*, 461 U.S. at 145–149, 103 S.Ct. 1684 (speech is a matter of public concern if it is of social or political interest to the community); *Zorzi v. County of Putnam*, 30 F.3d 885, 896 (7th Cir.1994) ("political speech is clearly a matter of public concern."); *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir.1982) ("A public endorsement of a candidate for public office is an expression of views" protected by the First Amendment.).

That a public employee's speech falls within the purview of the First Amendment does not, however, automatically prohibit the government from restricting that speech. The second prong of the *Connick–Pickering* analysis requires the plaintiff to show that his interest in exercising his rights outweighs the government's interest "in promoting the efficiency of its public services." *Caruso*

**3.** Because the *Connick–Pickering* test is a question of law, reviewing the district court's application of it is appropriate for a qualified immunity interlocutory appeal under *Behrens v. Pelletier*, 516 U.S. 299, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996). *See Prager v. LaFaver*, 180 F.3d 1185 (10th Cir. 1999); *McVey v. Stacy*, 157 F.3d 271, 277 (4th Cir.1998); *Brewster*, 149 F.3d at 977.

*v. DeLuca*, 81 F.3d 666, 670 (7th Cir.1996) (citations omitted). Our approach is solicitous of this governmental interest but attempts to ensure "that public employers do not use authority over employees to silence discourse, not because it hampers public functions but simply because superiors disagree with the content of the employee's speech." *Id.* (citing *Rankin v. McPherson*, 483 U.S. 378, 384, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987)).

■ This analysis is guided by a number of factors which we have held should be taken into consideration in this type of case:

> 1) whether the statement would create problems in maintaining discipline by immediate supervisors or harmony among co-workers; 2) whether the employment relationship is one in which personal loyalty and confidence are necessary; 3) whether the speech impeded the employee's ability to perform daily ... responsibilities; 4) the time, place and manner of the speech; 5) the context in which the underlying dispute arose; 6) whether the matter was one on which debate was vital to informed decision making; and 7) whether the speaker should be regarded as a member of the general public.

*Wright v. Illinois Dept. of Children & Family Services*, 40 F.3d 1492, 1502 (7th Cir.1994); *see also Rankin*, 483 U.S. at 390, 107 S.Ct. 2891. The burden of showing that the government's interests outweighed the plaintiff's falls on the defendant, Steil. *Glass v. Dachel*, 2 F.3d 733, 744 (7th Cir.1993) (citing *Rankin*, 483 U.S. at 388, 107 S.Ct. 2891); *see also Klunk v. County of St. Joseph*, 170 F.3d 772, 775 (7th Cir.1999). In undertaking this analysis, we reiterate that we assume that the plaintiff was not on-duty at the time he exercised his First Amendment rights. This assumption cuts much of the force from Steil's arguments, nearly all of which operate from the premise that the plaintiff was actually on duty.[4]

The defendant offers no evidence (with the exception of his own behavior) that Coady's conduct in any way poisoned the atmosphere of the SFD. The other supervisor at the Firehouse, Battalion Chief David Kervin, expressed no displeasure with Coady's off-duty conduct. Additionally, in their depositions, none of the other firefighters intimated that the "Curran for Mayor" sign threatened to undermine the sense of harmony at the Firehouse. This stands in marked contrast to the one relevant case the defendant cites, *Janusaitis v. Middlebury Volunteer Fire Dept.*, 607 F.2d 17 (2nd Cir.1979). *Janusaitis* held that a firefighter whose protected speech took the form of "verbal attacks," "carping criticism and abrasive conduct" toward his superiors sufficiently damaged the comity among his colleagues that the government was entitled to take disciplinary action against him for speaking out. *Id.* at 26. Those facts, however, bear virtually no resemblance to this case. Moreover, it strikes this court as bordering on implausible to think that Coady's off-duty activities

---

4. As noted above in footnote 2, if the plaintiff engaged in political activity while on-duty, his First Amendment claim would surely lose. Moreover, if the Illinois statute or Springfield ordinance put a total ban on all political activity by employees of public safety agencies whether on or off duty, the defendant would be able to put forth more compelling arguments as to why the government's interest in delivering public services efficiently outweighs the plaintiff's First Amendment rights. *See Horstkoetter v. Department of Public Safety*, 159 F.3d 1265, 1273–74 (10th Cir. 1998) (Highway patrol policy and state statute prohibiting state troopers from displaying political yard signs at their homes was constitutional because it proclaimed that police protection would be available to all citizens, "free from political overtones," and assured troopers that to advance professionally they "were not obliged to make a public display of political affiliation."). Because no such policy exists here regarding off-duty firefighters, the defendant cannot effectively rely on those arguments. Thus, it could be perceived that Steil silenced the plaintiff not because his speech "hamper[ed] public functions but simply because" the defendant "disagree[d] with the content of the employee's speech." *See Caruso*, 81 F.3d at 670.

could have caused the SFD serious concern. Chief Steil was, as previously noted, a Republican Committeeman and an active supporter of Karen Hasara. Also, a few hours after the alleged altercation between Steil and Coady, Springfield's St. Patrick's Day parade featured an off-duty firefighter driving an old—apparently no longer in-service—fire truck bearing a "Karen Hasara for Mayor" banner. These facts could appear to undercut the defendant's argument that his actions were taken with an eye toward preserving departmental harmony.

The other factors which the parties address are the time, place and manner of the plaintiff's speech, and whether the plaintiff was speaking as a firefighter. Again, because the defendant's arguments are premised on the notion that the plaintiff was on-duty when he engaged in political speech, they are of little help. Assuming, as we must, that the plaintiff was not on-duty when he spoke, there was nothing disruptive about the time, place and manner in which he chose to exercise his rights. *Cf. Khuans v. School Dist. 110*, 123 F.3d 1010, 1017 (7th Cir.1997) (teacher's First Amendment claim foundered because the time, place, and manner in which she chose to express herself—in school, and packaged as part of a number of personal and hostile complaints against her supervisor—caused disruption of the regular daily activities of her department, and caused friction among her colleagues and supervisors); *Breuer v. Hart*, 909 F.2d 1035, 1040 (7th Cir.1990) (plaintiff went about filing complaint against sheriff/supervisor in an inappropriate manner even though his complaint addressed matters of public concern—he engaged in an "unauthorized investigation" of supervisor resulting in great departmental disruption).

As to whether the plaintiff was speaking as a firefighter, the balance is slightly closer, but it still militates in the plaintiff's favor. While we once again assume the plaintiff was not on-duty, his car was parked very close to the Firehouse, and a passer-by during the parade might have inferred that the SFD was endorsing Curran for Mayor. On the other hand, there was apparently nothing on the plaintiff's car which identified him as a firefighter. This clearly distinguishes the present case from the only authority the defendant relies on: *Detroit Fire Fighters Ass'n Local 334, I.A.F.F., A.F.L.-C.I.O. v. City of Detroit*, 508 F.Supp. 172 (E.D.Mich.1981). Not only is this less than persuasive authority, but *Detroit Fire Fighters* is factually inapposite. The facts of that case involved city firefighters who had appeared in full-dress uniforms as part of a political campaign opposed to passage of a resolution regarding firefighter promotion. *Id.* at 173–75. Unlike this case, the plaintiffs in *Detroit Fire Fighters* made it unmistakably clear that they were speaking as firefighters. Thus, contrary to the assertion in the defendant's brief, this is not "precisely the type of conduct" that was restricted in *Detroit Fire Fighters*. The fact that an old fire truck (even if it was out of service) was driven in the parade bedecked with a sign for a different candidate, tends to undercut the defendant's argument that he was concerned that the SFD would be construed as supporting any candidate, rather than a particular candidate. Reviewing all of these factors, we believe that the defendant has failed to carry his burden of showing that the plaintiff's right to exercise his First Amendment rights by affixing a placard atop his car in support of a candidate for mayor while he was off-duty was outweighed by the government's interest in the effective and efficient delivery of firefighting services.

The remaining question before us is whether it was "clearly established" on March 18, 1995 that a government official could not retaliate against a subordinate's protected exercise of political speech by hitting him. If Steil violated a clearly established constitutional right "of which a reasonable person would have known," then he may not claim qualified

immunity from suit. *See Harlow v. Fitz-gerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Supreme Court has cautioned that whether a right is clearly established must not be viewed at too great a level of generality, or else the doctrine would allow immunity in too few cases, and thus unduly hamper public servants. *See Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). As we observed in *Levenstein v. Salafsky*, "public officials should not need to have the insight of constitutional law scholars, or the hindsight of Monday morning quarterbacks, to succeed in a qualified immunity defense." 164 F.3d 345, 351 (7th Cir.1998). That said, we reject the defendant's argument that because this court has not previously had a case with identical facts to this one, the violation of the plaintiff's right to be free from harassment in his exercise of protected political speech could not have been clearly established. In *Markham v. White*, we recently held that "under the doctrine of qualified immunity, liability is not predicated upon the existence of a prior case that is directly on point." 172 F.3d 486, 492 (7th Cir.1999) (quoting *Nabozny v. Podlesny*, 92 F.3d 446, 456 (7th Cir.1996)). Indeed, because *Connick–Pickering* balancing always involves fact specific balancing, if plaintiffs had to point to a case on all fours with their own, defendants would nearly always be entitled to qualified immunity. However, we have rejected that argument. *See Gustafson v. Jones*, 117 F.3d 1015, 1021 (7th Cir.1997). Instead, we must ask "whether a reasonable state actor would have known that his actions, viewed in light of the law at the time, were unlawful." *Nabozny*, 92 F.3d at 456 (citing *McDonald v. Haskins*, 966 F.2d 292, 294 (7th Cir.1992)).

In looking at the law at the time of the defendant's conduct, we first note that his reliance on *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) and *Paulos v. Breier*, 507 F.2d 1383 (7th Cir.1974), is misplaced. *Broadrick* upheld the state's right to impose Hatch Act-type regulations on state civil servants across the board, which as we have already noted, bears little resemblance to this case. *Paulos* affirmed the constitutionality of a Milwaukee Police Department rule restricting police officers from interfering or using the influence of their office for political reasons. 507 F.2d at 1383–85. Again, that case is of little help to the defendant's cause. We reiterate that if Coady was on-duty when he spoke out, or if Steil could rely on the policy justifications put forward by states which broadly curtail civil servant's off-duty activity, our analysis would differ.

We believe it was clear on March 18, 1995, that in this circuit, a government official could not harass a subordinate employee because of that individual's activities in support of political candidates, when the subordinate employee's actions were protected by the First Amendment and not in contravention of any state law, municipal ordinance or departmental policy. In *Bart v. Telford*, we explicitly noted that "a public endorsement of a candidate for public office is an expression of views that is within the protection of the First Amendment." 677 F.2d 622, 625 (7th Cir. 1982). Although we have held that in certain circumstances, such as where the subordinate's endorsement is for a candidate other than her own supervisor, some form of transfer or even termination may be justified, *see e.g. Bicanic v. McDermott*, 867 F.2d 391 (7th Cir.1989), that is far from the case here. *Bart* also made clear that "a campaign of ... harassment" which would deter a person of "ordinary firmness" from exercising their First Amendment rights was prohibited. 677 F.2d at 625; *see also Pieczynski v. Duffy*, 875 F.2d 1331, 1333 (7th Cir.1989). We think it clear that being punched in the face would deter anyone from exercising his or her First Amendment rights. Although *Bart* and *Pieczynski* are factually different from this case, they were specific in what kind of speech was protected, and what kind of retaliation was prohibited.

Those cases (along with a dose of common sense) should have made it clear to the defendant that on March 18, 1995, he could not impinge on the plaintiff's exercise of political speech, and that he certainly could not retaliate against Coady in the fashion he did.

### Conclusion

For the reasons we have discussed, the district court's denial of summary judgment to the defendant is

AFFIRMED.