Richard MEDINA, Angelo Machuca, Jr., David Gemeinhart, Xavier Herrera, John Nava, Kevin Harretos, Fard Elliot, Nicholas Kokot and Miguel Santos, Plaintiffs,

v.

The CITY OF EAST CHICAGO, INDIANA, Robert Pastrick, individually and in his official capacity as Mayor, and Frank Alcala, individually and in his official capacity as Chief, Defendants.

No. 2:00CV0244AS.

United States District Court,
N.D. Indiana,
Hammond Division.

Dec. 3, 2001.

Bruce Carr, Merrillville, IN, for plaintiffs.

Anthony DeBonis, David S. Gladish, Highland, IN, Richard J. Lesniak, Sr., William M. Murakowski, East Chicago, IN, Michael W. Bosch, Hammond, IN, for defendants.

### MEMORANDUM AND ORDER

ALLEN SHARP, Judge.

Richard Medina, Angelo Machuca, Jr., David Gemeinhart, Xavier Herrera, John Nava, Kevin Harretos, Fard Elliot, Nicholas Kokot and Miguel Santos ("Plaintiff Officers")[1], nine officers employed by the East Chicago Police Department, have brought a claim under 42 U.S.C. § 1983 against the City of East Chicago, Indiana and against its Mayor and Police Chief in their individual capacities. The Defendants now move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, the Defendants' motions are **GRANTED** in part and **DENIED** in part.

### I. BACKGROUND

The City of East Chicago, Indiana is a municipal corporation and is organized and operated under the laws of Indiana. The Defendant, Robert A. Pastrick, is the mayor of the City of East Chicago. The Defendant, Frank Alcala, is the Chief of Police of the East Chicago Police Department ("ECPD"). The Plaintiff Officers allege that they have been treated "unfavorably" (i.e. failed to be promoted, transferred, or generally harassed) because of their protected activities under the First Amendment. Generally, the Plaintiff Officers allege that because they did not support Pastrick and others in his political

---

1. The court will use this general definition as it applies to the context and background of all parties claims and will use each individual Plaintiff's name in discussing his separate specific claim as seen below.

camp or spoke out on certain alleged matters of public concern they were subjected to adverse treatment by Alcala and Pastrick.

It is undisputed that Alcala supported the mayor and various other incumbent candidates for the city council which supported Pastrick. Furthermore, it is an undisputed fact that in February of 1998, Richard Medina, one of the Plaintiff Officers, filed his candidacy for Precinct Committeeman for Precinct 6–3 in East Chicago; he also ran for city council and was elected to that position in 1999. (Complaint ¶ 6). In their complaint the Plaintiff Officers contend that they all supported the candidacy of Medina. (Complaint ¶¶ 7,8). Furthermore, it is their contention that both Pastrick and Alcala opposed Medina's candidacy. (Id.). In fact neither Pastrick nor Alcala supported Medina's candidacy. (Alcala Dep. pp. 17–18; Pastrick Dep. p. 39 stating "He was not in my disfavor").

## A. ECPD PROMOTIONS

Between 1998 and January 2000, a number of promotions were made in the East Chicago Police Department. (Plaintiff's Exhibit A). It is the Plaintiff Officers contention that members that actively supported Pastrick and Alcala's agenda were promoted. Furthermore, the Plaintiff Officers contend that they were either not promoted because they were politically opposed to that agenda or did not actively support the agenda as did the officers that were promoted in January of 2000. A few of the Plaintiff Officers contend that they were also not promoted because they spoke out on matters involving the operation of the ECPD.

The promotion protocol within the ECPD requires that an individual proceed through the first three levels of rank according to the amount of time with the department. (East Chicago Police Department Rules and Regulations pp. 115–118). Thereafter, higher rank is achieved based upon educational requirements. (Id.). Additionally, promotion to the rank of sergeant requires at least five years of service with the department. (Rules and Regulations, § 500.9). Similarly, ECPD regulations require that any individual considered for a promotion above the rank of Sergeant reside, at the time of the promotion, in the City of East Chicago. (Rules and Regulations § 503).[2]

Pastrick testified that he deferred to Alcala to make all employment decisions for the East Chicago Police Department. (Pastrick Dep. pp. 38). Alcala testified that the Safety Board makes all final employment decisions concerning the East Chicago Police Department. (Alcala Dep. pp. 39). However, with respect to promotions within the East Chicago Police Department a screening board evaluates each possible promotion before a final decision is made by the Safety Board. (Ramos Dep. pp. 43–44). At all relevant times to this action, the members of the screening board included; Alcala, David Morris, John Ramos. (Alcala Dep. pp. 63). Some of the criteria used to evaluate potential candidates for promotion included the following: physical qualities; character; leadership; intellectual capacity; emotional stability; residency and time on the department. (Alcala Dep. pp. 71, 129, 137; Ramos Dep. pp. 248 249; Chavarria Dep. p. 73). The members of the screening board testified during their depositions that, outside of Medina, they were unaware of any of the Plaintiff Officers' political leanings, views or involvement. (Alca-

---

**2.** Under Indiana law, police officers need not reside in the city to be a member of that city's police department. Ind.Code § 36–8–4–2.

Therefore, no discipline or demotion can result if an officer moves out of the city after a promotion.

la Dep. pp. 142–43; Ramos Dep. pp. 183; Chavarria Dep. pp. 89). Between the years 1998 and January 2000, the screening board considered some 121 officers for promotion with the ECPD. (Alcala Dep. pp. 69–70). The screening board determined that none of the Plaintiff Officers met the qualifications or criteria established by the screening board and therefore none were promoted. See (Alcala Dep. pp. 62; Samuels Dep. pp. 37–38; Chavarria Dep. p. 41; Ramos Dep. pp. 250–51).

A careful examination of the evidence concerning the January 2000 promotions demonstrates that at least a majority of the individuals that were promoted were actively supporting Pastrick's campaign. John Ramos testified in his deposition that Maldonado, Howard, Smith, Wilder, Bork, Suchanuk, Santos, Arcuri, DeLaCruz all supported the Mayor's campaign. (Ramos Dep. pp. 185–187). Furthermore, Ramos stated that he had seen officers Chavarria and Samuels at Pastrick's headquarters. (Ramos Dep. p. 23). Angelo Machuca testified during his deposition that Hillsman, Bork, Santos, Arcuri and DeLaCruz passed out literature in support of the team supporting Pastrick's agenda. (Machuca Dep. pp. 52–55). Alcala testified that some of the promoted officers had disciplinary problems in the past. (Alcala Dep. pp. 52–55). Most importantly, the Plaintiff Officers have failed to demonstrate that the majority of the promoted officers were not qualified. In fact, the Plaintiff Officers concede that some of those promoted should have been promoted. (Medina Dep. pp. 30–34; Machuca Dep. pp. 36–41).

### a. RICHARD MEDINA

Officer Medina has been employed by the ECPD for some twelve years. (Medina Dep. p 4). Medina worked as a detective from 1994 until 1998. In 1999 Medina was elected to the city council. (Medina Dep. pp. 24, 43). In 1998 Medina was transferred from the detective division to the patrol division. (Alcala Dep. pp 232–234). Medina terms this transfer as a demotion because of the following: 1) the esteem given to the detective position and psychological effect of being removed from that position; 2) being assigned to work the furthest area away from his home; 3) removal of overtime privileges and 4) increase in pay at the detective position level. (Ramos Dep. 121; Medina pp. 16, 41, 58–59). Furthermore, Medina asserts that the transfer forced a lifestyle change requiring him to return to wearing a police uniform, force him to work varying hours. This change to shift work required his wife to leave her job to take care of their child. (Medina Dep. pp. 45, 60–61).

Medina asserts that he was demoted because of his political activities in March of 1998. (Plaintiff's Exhibit B). However, Alcala testified in his deposition that Medina's transfer was based primarily on his evaluation at that time by his supervisor that he was not doing his required work. Alcala based this conclusion on recommendations from Medina's supervisor and from the screening board that Medina was not "doing his work, he was on the phone constantly and didn't follow-up with assignments." (Alcala Dep. pp. 61–71). Ramos confirmed this assessment in his deposition testimony. (Ramos Dep. pp. 100 ("when he was in the juvenile bureau it was brought to our attention by his supervisor that he was not doing his job."). The supervisor stated "that he was too busy 'politicking' and he wasn't doing his job when it came down to it." (Id.). According to the Defendants, Medina's pay was reduced by about $15.75 per week. (See Maldonado Aff. ¶¶ 5–6).

Furthermore, Medina alleges that he was not promoted because of his political leanings. (See Medina Dep. p. 22).

Again, Chief Alcala testified that he didn't believe that Medina was qualified for a promotion within the Department. (Alcala Dep. pp. 61–71).

### b. ANGELO MACHUCA

Officer Machuca has been employed by the ECPD for over fifteen years with the last seven being as a detective. (Machuca Dep. p. 11). Machuca was heavily involved in Medina's campaign, serving as the chairman of the committee to elect Medina. (Machuca Dep. p. 6). According to Machuca, Alcala and his camp did not want officers to support Medina's campaign. (Id.).

Machuca asserts several facts to establish that he was treated adversely for his support of Medina: 1) he was reassigned to security block; 2) he was reassigned to the gang unit and required to work late hours. (Machuca Dep. pp. 15). Machuca testified during his deposition that Maldonado told him that the administration had reassigned him because of his support during Medina's campaign. (Machuca Dep. p. 18). According to Machuca, he was passed over for a promotion despite being, in his words, more qualified and having more seniority. (Machuca Dep. pp. 26–28).

Chief Alcala did not believe that Machuca possessed the qualities needed for promotion. (Alcala Dep. pp. 97–102). Alcala based this assessment on the following factors: 1) that Machuca voiced negative criticisms about the administration of the ECPD; 2) lacked a team player mentality; 3) poor character; 4) lack of rapport with other members of the force and 5) lacked leadership qualities. (Id.).

### c. JOHN NAVA

On March 9, 1998, Officer Nava was transferred from the detective division to the patrol division. He asserts that this transfer was a demotion and was done because of his support of Medina and his lack of support of Pastrick. (Nava Dep. pp. 5,6,19, 41–42). According to Nava, a detective receives additional pay, works only Monday through Friday, and receives weekends off. (Nava Dep. p. 14). Furthermore, Nava contends that he was assigned to work detention which he considers (and is allegedly common knowledge) a form of punishment.(Nava Dep. p. 39). Nava believes that he was adversely treated because he did not follow the administration's political agenda. (Nava Dep. pp. 23).

Alternatively, Alcala contends that Nava was removed from the detective bureau because he was not doing his job. (Alcala Dep. pp. 234–235). Alcala stated that Nava was not promoted in January of 2000, because he didn't care about his job, didn't do it well and lacked the requisite leadership qualities. (Alcala Dep. pp. 119–122). The record reveals that Nava did not appeal either of these alleged adverse actions to the Safety Board.

### d. NICHOLAS KOKOT

At the time of his deposition in July 2000, Officer Kokot had been with the ECPD for four years and some odd months. He held the rank of patrolman at that time. Kokot alleges that he was punished for not supporting Pastrick and supporting Medina by being passed over for promotion and being assigned to punishment areas and poor duties. (Kokot Dep. pp. 13, 18, 21–23). Kokot cites an instance where he ticketed some of Pastrick's political supporters and was later punished as an example of the Defendants' adverse treatment of him. (Kokot Dep p. 14). Kokot later met with Pastrick to discuss this instance and other issues he had with the ECPD and Alcala. This meeting took place approximately one month before the democratic primary. (Kokot Dep. 65). During that meeting, Kokot made a re-

cording of his discussion with Pastrick, but without Pastrick's knowledge. Kokot testified that he felt that he had been threatened by Pastrick. (Kokot Dep. pp. 23–25; 28–29). Kokot alleges that he was passed over for promotion because he spoke out about the misconduct in the ECPD. (P's Exhibit EE). Kokot alleges that he was passed over despite others who were promoted not having five years on the ECPD and Ramos testimony as to his record of achievement with the ECPD. (Ramos Dep. pp. 137–138, 140).

According to Alcala, the screening board immediately disregarded Kokot for promotion because he did not have the requisite amount of time with the department to be considered for promotion to sergeant. (Alcala Dep. pp. 130–137).

### e. MIGUEL SANTOS

Officer Santos has been employed by the ECPD since 1991. (Santos Dep. p. 4). Santos testified that he was heavily involved in Medina's campaign. (Id. at p. 5). Santos asserts that because of his support for Medina, he was not promoted and unfairly disciplined. (Santos Dep. p. 8). Santos alleges that he was disciplined for an infraction after a year had transpired since the time of the alleged event. (Santos Dep. p. 9).

Santos also alleged that the ECPD administration would not support him in a lawsuit involving certain acts performed in the line of duty; but that the ECPD did support another officer who had supported the political agenda of the administration. (Santos Dep. pp. 12–13). Santos asserts that this treatment was due to his lack of support of the administration's political agenda. (Santos Dep. p. 35). Santos also alleges that he was pressured into going to one of Pastrick's fund-raisers, donating money and generally supporting Pastrick. (Santos Dep. pp. 18–21). Santos alleges that he did not complain about these abuses because he felt it would have been a waste of time. (Santos Dep. pp. 25).

Alcala contends that because Santos did not reside within the city limits of East Chicago before the January 2000 promotions, he was therefore ineligible to be considered for a promotion. Furthermore, Alcala felt that Santos did not have the requisite leadership qualities. (Alcala Dep pp. 137–142).

### f. KEVIN HARRETOS

Officer Harretos had been employed by ECPD for over seven years at the time of his deposition in the instant suit. (Harretos Dep. p. 4). Harretos supported Medina in both his bid for Precinct Committeeman as well as for city council. (Harretos Dep. pp. 5–6). He alleges that the department harassed and suspended him because of his connection with Medina. Harretos has been suspended a total of 35 days, but has failed to appeal any of the suspensions. (Harretos Dep. pp. 6–11). Harretos alleges that an appeal would have been frivolous and might have resulted in additional suspensions. (Harretos Dep. p. 10). Additionally, he alleges that Alcala required him to change a police report for one of Pastrick's political allies. (Harretos Dep. pp. 15–16, 44–46, 48).

Harretos alleges that as a result of his political disloyalty, he was given less desirable assignments despite his seniority, suspended for refusing to work overtime and not promoted. (Harretos Dep. pp. 19, 4057, 141). However, Harretos deposition testimony reveals that a year prior to the promotions he was not concerned with promotions and may have been more interested in activities outside of his job. (Harretos Dep. p. 33). Alcala testified that Harretos was unfit for promotion because he did not retain the requisite qualities for promotion. (Alcala Dep. pp. 122–123).

### g. DAVID GEMEINHART

Officer Gemeinhart has been employed by the ECPD for over nine years. (Gemeinhart Dep. p. 5). Gemeinhart alleges that he has been treated adversely because he has spoken his mind and for not supporting Pastrick and Alcala's agenda. (Gemeinhart Dep. p. 6). It also appears that Gemeinhart is alleging that he was treated adversely because he attempted to get a merit system implemented at ECPD. (Gemeinhart Dep. pp. 68–69). Gemeinhart makes several allegations concerning favorable treatment given to individuals who supported the agenda of both Pastrick and Alcala. For example, he contends that a ticket given to a political supporter somehow turned into a warning and allowing certain alleged perpetrators of illegal gambling activities to go free because of their political connections. (Gemeinhart Dep. pp. 10, 13–17, 33, 35, 36, 59 and Exhibit C). Gemeinhart alleges that he was punished because he spoke out against these alleged improprieties and other matters within the ECPD. See (Gemeinhart Dep. p. 11, 59, 62 for litany of complaints concerning lack of equipment within the ECPD).

Gemeinhart contends that he was given unfavorable shift assignments because he spoke out. (Gemeinhart Dep. pp. 9, 12, 51–52). Gemeinhart was also involved in an altercation with another officer who was an alleged political ally of Pastrick and Alcala.

The screening board determined that Gemeinhart was not qualified for promotion based upon his out of town residency. Furthermore, Alcala stated that Gemeinhart was not a team player, failed to follow orders at times, lacked leadership qualities and was often critical of the ECPD and the administration. (Alcala Dep. pp. 103–05; Chavarria Dep. pp. 61–64; Ramos Dep. pp. 169–75).

### h. FARD ELLIOT

Officer Elliot has been employed by the ECPD for over twelve years. (Elliot Dep. p. 4). Elliot contends that he was treated adversely by Alcala because he did not support Alcala and Pastrick's political agenda. (Elliot Dep. pp. 20–21). Elliot alleges that Alcala suspended him without cause on various occasions (i.e. hair length not being according to regulation). (Elliot Dep. pp. 7, 12, 13, 15). Elliot alleges that he did not appeal the suspensions because it would have been useless and he would suffer further retaliation. (Elliot Dep. pp. 11, 14).

According to Alcala, Elliot was not considered for promotion because he did not live in the city of East Chicago at any time during the promotions. (Elliot Dep. p. 20). With respect to the various suspensions, Elliot was suspended for discourteous behavior, improper use over the air. (Elliot Dep. pp. 7, 12–13). Furthermore, Elliot did not appeal any of the alleged underlying incidents that led to his suspensions. (Elliot Dep. p. 11).

### i. XAVIER HERRERA

Officer Herrera has been employed by the ECPD for over ten years. (Herrera Dep. P. 5). Herrera supported the political campaigns of Medina. Herrera alleges that he was treated adversely for not supporting Alcala and Pastrick's political agenda. Herrera contends that he was suspended for three days for a minor infraction involving his uniform. (Herrera Dep. p. 11).

Alcala, along with the screening board, determined that Herrera was not a fit candidate for promotion because of a number of personal deficiencies as well as a federal investigation involving his possible involvement in illegal activity. (Alcala Dep. pp. 107–117).

## I. DISCUSSION

### A. STANDARD OF REVIEW

The Plaintiff Officers must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Electric Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). They must present "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e) and only if a reasonable jury could render a verdict for them do they defeat summary judgment. *Jordan v. Summers* 205 F.3d 337, 342 (7th Cir.2000). *See Also Vanasco v. National–Louis Univ.*, 137 F.3d 962, 965 (7th Cir.1998). In determining whether summary judgment is appropriate, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202.

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the non-movants and all factual disputes resolved in their favor. *Schneiker v. Fortis Insurance Co.*, 200 F.3d 1055 (7th Cir.2000); *Baron v. City of Highland Park*, 195 F.3d 333, 337–38 (7th Cir.1999). The burden of establishing a lack of any genuine issue of material fact rests on the movants. *Wollin v. Gondert*, 192 F.3d 616, 621–22 (7th Cir.1999); *Essex v. United Parcel Service, Inc.*, 111 F.3d 1304, 1308 (7th Cir.1997). The nonmovants, however, must make a showing sufficient to establish any essential element for which they will bear the burden of proof at trial. *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) *Shank v. William R.*

*Hague, Inc.*, 192 F.3d 675, 681 (7th Cir. 1999); *Wintz v. Northrop Corp.*, 110 F.3d 508, 512 (7th Cir.1997).

The Seventh Circuit is clear on the following point; summary judgment may not be defeated by evidence that is not admissible at trial. See *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir.1996) "The evidence relied upon must be competent evidence of a type otherwise admissible at trial. Thus, a party may not rely upon inadmissible hearsay in an affidavit or deposition to oppose a motion for summary judgment." *Id.;* See also; *Patel v. Allstate Insurance Co.*, 105 F.3d 365, 367–69 n. 1 (7th Cir.1997). This includes hearsay statements which do not fall within one of the stated exceptions under FED. R. EVID. 801. See *Morrow v. Wal-Mart Stores, Inc.*, 152 F.3d 559, 562–63 (7th Cir.1998).

Furthermore, conclusory statements or mere speculation cannot be the basis of either the grant or denial of summary judgment. *Abioye v. Sundstrand Corp.*, 164 F.3d 364, 368 (7th Cir.1998); (Statements must demonstrate with sufficient particularity that certain adverse actions had taken place and not based upon rumor or mere conjecture.). *Uhl v. Zalk Josephs Fabricators, Inc.*, 121 F.3d 1133, 1137 (7th Cir.1997)(Plaintiff's statement "I know what I felt" was insufficient to demonstrate that the employer's adverse action was based upon a discriminatory or impermissible purpose.). Much of the evidence offered by the Plaintiff Officers is in the form of self-serving, speculative and conclusory testimony and as demonstrated by the above cases this evidence will not defeat a motion for summary judgment.[3]

3. On October 15, 2001, the City of East Chicago tendered a motion to strike various materials submitted by the Plaintiff Officers including: an affidavit by Officer Kokot, and various other documents. That motion is **DE**-

**NIED**, however, the court will disregard any evidence that does not comport with the Rules of Evidence as described above in reaching its decision on the present motions for summary judgment.

With these principles in mind, the court now turns to the substantive merits of the case.

## B. FIRST AMENDMENT CLAIMS

The various Plaintiff Officers rest their claims primarily upon the violation of their First Amendment rights. Although not always lucid from their complaint and brief, they contend that they were treated adversely and/or retaliated against because of their political affiliations as well as their right to speak about alleged public matters involving the ECPD. See *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 75, 110 S.Ct. 2729, 2737, 111 L.Ed.2d 52 (1990); See *Rankin v. McPherson,* 483 U.S. 378, 383, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). In a somewhat shotgun approach, they have tried to mold these two distinct claims into one single violation against the Defendants, which, at the end of the day, may be appropriate. However, for clarity sake, the court will attempt to go through the arduous process of analyzing each distinct legal claim and the relevant facts surrounding those claims.

■■■ The analytical framework for both a political association claim and free speech claim are one and the same and although the framework is similar to the framework employed in other employment discrimination claims, such as Title VII, the analysis is not identical. See *Stephens v. Kerrigan,* 122 F.3d 171, 176 (3rd Cir. 1997); See also *Acevedo–Diaz v. Aponte,* 1 F.3d 62, 66 (1st Cir.1993). The analysis, established by the Supreme Court in *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), requires the following prima facie showing: 1) the employee was exercising a protected constitutional right; 2) the exercise of that right or protected conduct was a substantial or motivating factor in the adverse employment action. *Mitchell v. Randolph,* 215 F.3d 753, 758

(7th Cir.2000); *Kuchenreuther v. City of Milwaukee,* 221 F.3d 967, 973 (7th Cir. 2000) citing *Kokkinis v. Ivkovich,* 185 F.3d 840, 843 (7th Cir.1999); See also *Stephens,* 122 F.3d at 176. Once the following prima facie showing is made; the burden then shifts to the Defendant to establish that it would have arrived at the same decision even in the absence of the protected conduct. *Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. 568; *Mitchell,* 215 F.3d at 758.

■■■ The Defendants vehemently assert that the Plaintiff Officers have failed to show any adverse job action resulted that would support the allegation of a denial of their constitutional rights. (See Memorandum of Defendant City of East Chicago, pp 6–11). While this would seem to be a logical requisite before liability could be imposed, the Seventh Circuit has plainly found that such an "adverse employment action" is not needed. *Power v. Summers,* 226 F.3d 815, 820 (7th Cir.2000). In *Power,* Judge Posner goes to great length in discussing the differences between an employment action under Section 1983 and Title VII of the Civil Rights Act of 1964. See *Id.* at 820–21. "There is no similar limitation ["adverse employment action"] in section 1983, or the constitutional doctrines that it is a vehicle for enforcing." *Id.* Judge Posner goes on to state that "[a]ny deprivation under color of law that is likely to deter the exercise of free speech, whether by an employee or anyone else, is actionable, even something as trivial as making fun of an employee for bringing a birthday cake to the office to celebrate another employee's birthday if the circumstances are such as to make such a refusal an effective deterrent to the exercise of a fragile liberty." (internal citations omitted.) *Id.* at 820; See also *McGill v. Board of Education,* 602 F.2d 774, 780 (7th Cir.1979). Thus, if it is demonstrated by the Plaintiff Officers that a denial of con-

stitutional rights occurred, no showing of an adverse employment action is necessary so long as the act by the official can be construed as an effective deterrent to their protected constitutional acts.

## C. MUNICIPAL LIABILITY

 The court takes a momentary detour from the substantive merits of the case to analyze whether liability against the City of East Chicago can be maintained if any of the Plaintiff Officers are successful on their underlying claims. "To establish that a municipality has violated an individual's civil rights under § 1983, the plaintiff must show one of the following: (1) that the city had an express policy that, when enforced, causes a constitutional deprivation; (2) that the city had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage within the force of law; or (3) that the plaintiff's constitutional injury was caused by a person with final policymaking authority." *Billings v. Madison Metro. Sch. Dist.*, 259 F.3d 807, 817–18 (7th Cir.2001) citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); See also; *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir.2000). It is clear that the city does not have an express policy causing a constitutional deprivation. Indiana law expressly forbids the consideration of political affiliations in making employment decisions. Ind.Code § 36–8–3–4(b). Furthermore, the Rules and Regulations of the ECPD provide that the conduct of all members of the Department as to political activity ".. be consistent with the laws of the State of Indiana and the Constitution of the United States." (ECPD Rules and Regulations, § 200.9 p. 58).

The Plaintiff Officers have all expressed the opinion that there is a widespread practice within the ECPD that political supporters of Pastrick and Alcala's agenda are promoted while those that do not are not promoted and treated adversely. See *City of Canton v. Harris*, 489 U.S. 378, 385–86, 109 S.Ct. 1197, 1202, 103 L.Ed.2d 412 (1989); *Graham v. Sauk Prairie Police Comm'n*, 915 F.2d 1085, 1100 (7th Cir.1990). Here the Plaintiff Officers have alleged that they all have been treated adversely as a result of this widespread policy. See (Plaintiff Officers Statement of Genuine Issues) Alcala testified that such a promotional system may have gone on in the past. (Alcala Dep. p. 92). However, a mere boilerplate conclusory statement that a wide spread pattern or a deliberate indifference to an unconstitutional policy will not suffice. *Baxter by Baxter v. Vigo Cty. Sch. Corp.*, 26 F.3d 728, 736(7th Cir.1994).

The Plaintiff Officers have failed to come forward with any evidence outside of their mere conjecture, opinion and belief that such an unexpressed policy existed. First, complaints of this alleged unexpressed policy was never presented to the Safety Board, the final decision-maker. Furthermore, the Plaintiff Officers' inadmissible hearsay statements as to why other officers left the ECPD does nothing to further their contention that an unexpressed policy existed. The lack of merit as to a majority of the Plaintiff Officers claims, as seen below, further undermines their contention that such an unexpressed policy existed within the ECPD. See *Warner v. City of Terre Haute, Ind.*, 30 F.Supp.2d 1107, 1120 (S.D.Ind.1998) citing *Gibson v. Chicago*, 910 F.2d 1510, 1522–23 n. 20 (7th Cir.1990).

 Finally, the Plaintiff Officers contend that the alleged adverse treatment was the result of a direct act by an individual with final policy-making authority. The determination of whether Pastrick or Alcala had final decision making authority

with respect to the alleged adverse treatment is a question of state and local law. *Eversole v. Steele,* 59 F.3d 710, 715 (7th Cir.1995). If an individual officer is adversely treated as a result of his refusal to support a particular agenda or candidate or speak out on a matter of public concern, then the relevant policymaker would be the individual responsible for implementing or enforcing the rules. *Warner v. City of Terre Haute, Ind.,* 30 F.Supp.2d 1107, 1122 citing *Eversole,* 59 F.3d at 716.

The court must now turn to the Indiana statutory provisions as well as the rules and regulations governing the ECPD to determine whether Pastrick or Alcala had final policy/decision-making authority over the alleged adverse actions taken as a result of the Plaintiff Officers alleged constitutionally protected activity. The city of East Chicago is a second class city and as such Indiana law provides that administration of the ECPD shall be administered by a Safety Board. See Indiana Code § 36–8–3–2 (Michie 1999). Furthermore, Indiana statutory law provides that the Safety Board may adopt rules for the government and discipline for the police department. Ind.Code § 36–8–3–2(d). Any disciplinary action against a police officer must comport with Section 36–83–4 and political affiliation may not be considered in making any decision under this section.

### i. Alcala

 As borne out by the testimony of Alcala, any promotion, demotion or termination is presided over by the Safety Board. No evidence exists that the Safety Board, as final policy maker, violated the Plaintiff Officers constitutional rights. The Safety Board was not presented with any complaints of the ECPD promotional system, either on the part of the individual Plaintiff Officers in this case or that the system was flawed as a whole because it was based upon improper and unconstitutional criteria. Furthermore, the Plaintiff

Officers have not named the individual members of the Safety Board in this suit. Therefore, the Plaintiff Officers attempt to impose municipal liability based upon the contention that either Alcala or Pastrick was a final decision maker must fail as it relates to their claims for not being promoted.

However, the adverse treatment alleged by the Plaintiff Officers is not limited to their failure to be promoted. Rather it includes other forms of adverse treatment by Alcala including being transferred to other shifts; suspensions; etc. At this stage of the proceeding, after a careful review of the record and the city's brief, the court is unable to determine whether Alcala had final decision making authority with respect to these alleged adverse acts. In *Warner,* the district court found after a careful review of the relationship between the merit commission and the police department, that the reassignment of an officer, changing her shift schedule and requiring her to remain at her post was taken in a policy-making role. 30 F.Supp.2d at 1123–1124. The court based this determination on the fact that no disciplinary measures were taken that would open the chief's decision to scrutiny by the merit commission. *Id.* at 1124. Therefore, the court found that if the chief's conduct resulted in a deprivation of the officer's constitutional or other civil rights, the city would be liable for the harm caused. *Id.*

The record is not entirely clear with respect to the other acts of alleged mistreatment by Alcala. This may have resulted from the City's misinterpretation of what constituted an impermissible act on its part. See (City's Brief p. 6–7 citing *Conley . v. Village of Bedford Park,* 215 F.3d 703, 712 (7th Cir.2000) and *Smart v. Ball State University,* 89 F.3d 437, 441

(7th Cir.1996)).[4] Alcala testified during his deposition that any disciplinary action taken against an ECPD officer was subject to review by the disciplinary review board. (Alcala Dep. p. 39). At all times relevant to this action, the disciplinary review board was made up of Alcala, David Morris and John Ramos. (Alcala Dep. p. 39). Furthermore, Alcala stated that he makes the final determination to accept or reject the proposals of the review board. (Id.) Neither party has directed this court to any further review of a disciplinary action arrived at by Alcala. Therefore, it must be presumed at this stage of the proceedings that he is the final authority with respect to this act. Therefore, if it is determined that any of the adverse actions (other than a failure to be promoted) were taken against any of the Plaintiff Officers which resulted from a decision by this review board that was ultimately accepted by Alcala, liability could be imposed against the City of East Chicago.

*ii. Robert Pastrick*

█ The Plaintiff Officers have offered no evidence other than their mere conjecture or speculation that Pastrick was involved in any of the alleged adverse actions of which they complain. The mere attempt to link Alcala's support of Pastrick as a candidate and others with similar political leanings without more is insufficient to demonstrate Pastrick's involvement in any decision within the ECPD. Pastrick had no involvement in any of the employment decisions involving the ECPD. (Pastrick Dep. pp. 38; Ramos Dep. pp. 38–49; Alcala Dep. pp. 39–40, Samuels Dep. pp 20–22). Furthermore, Pastrick had no knowledge concerning the political involvement of any of the plaintiffs, with the exception of Medina. (Pastrick Dep. pp. 39). Pastrick had no knowledge of any conversations with any officer involving being treated unfairly because of their political views or lack of political participation. (Pastrick Dep. pp. 55–56). The Plaintiff Officers mere beliefs and opinions that Pastrick was behind their adverse treatment because of his position as mayor is insufficient to create a genuine issue of fact. *Garrett v. Barnes,* 961 F.2d 629 (7th Cir.1992).

Kokot and Nava contend that Pastrick had threatened them. The context of this threat is not developed and gives the court no background upon which these alleged threats were made, making review of these threats in light of the claims made nearly impossible. The court can only surmise that Kokot is referring to a conversation which he secretly recorded, which does not demonstrate any threat by Pastrick whatsoever. Furthermore, Nava plainly stated during his deposition testimony that he never felt threatened by anybody in a position of authority and that Pastrick had no role in any decisions within the ECPD that impacted him. (Nava Dep. pp. 24, 45). Therefore, given the lack of any evidence produced by the Plaintiff Officers with regard to Pastrick's involvement in any adverse treatment within the ECPD; the court finds that summary judgment is warranted with respect to all claims involving Pastrick in both his individual and official capacity.

## D. POLITICAL PATRONAGE CLAIMS

█ The court now turns to a discussion of the various claims alleged by the

---

4. As stated above, an adverse employment action is not necessarily needed so long as the action is sufficiently "adverse" to deter the exercise of one's constitutional right. *Power v. Summers,* 226 F.3d 815, 820–21 (7th Cir. 2000) ("explaining that a 'campaign of petty harassment' and 'even minor forms of retaliation,' 'diminished responsibility, or false accusations' can be actionable under the First Amendment.").

Plaintiff Officers. Conspicuously absent from the briefs is a discussion of *Rutan* and its edicts. However, this background is needed to give context to the Plaintiff Officers claims. *Rutan* provides that promotions, transfers, recalls, and other hiring decisions involving public employees may not be premised on political association, affiliation or support unless the government can show that party affiliation is an appropriate requirement for that position. *Rutan*, 497 U.S. at 75, 110 S.Ct. 2729. Here neither party is disputing that these Plaintiff Officers are public employees. Neither are the Defendants asserting that their positions within the East Chicago Police Department fall within any exception provided under *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) or *Rutan*, 497 U.S. 62, 110 S.Ct. 2729. Rather the Defendants are asserting that: 1) the Plaintiff Officers have not suffered any adverse action because of their protected First Amendment activity; 2) Not all of their conduct was protected under the First Amendment; and 3) no causal connection existed between any alleged protected conduct and any alleged adverse treatment. However, as stated above no adverse employment action is needed only that the conduct was sufficiently adverse so as to be an effective deterrent to their protected constitutional activities.

■ It has long been established that political activities (i.e. running for office, supporting a particular political candidate) are protected by the First Amendment. See *Coady v. Steil*, 187 F.3d 727, 731–32 (7th Cir.1999); *Garrett v. Barnes*, 961 F.2d

629, 632 (7th Cir.1992) ("No dispute that Plaintiff's endorsement of and support for.. campaign is protected by the first amendment."). Furthermore, it is important to note that none of the Defendants have raised any countervailing interests that would outweigh the Plaintiff Officers rights to fully exercise their First Amendment freedoms. See *Coady*, 187 F.3d at 731. Therefore, the court must proceed with a determination with respect to each of these Plaintiff Officers claims and must determine whether the exercise of their alleged protected First Amendment guarantees was a substantial factor in the Defendants adverse treatment of them. See *Mt. Healthy City Board of Education*, 429 U.S. at 287, 97 S.Ct. 568.

### a. RICHARD MEDINA

■ In 1998, Medina was transferred from his position within the detective division to the patrol division and cites to his political endeavors during that same period as the reason. Furthermore, Medina cites to his continued disfavored political agenda by Alcala and Pastrick as the reason for his failed promotion during the period from 1998 until January 2000. The evidence put forward by Alcala and others on the screening board reveals several legitimate reasons for Medina's transfer. However, other evidence demonstrates that a possible improper motive may have been the result of the transfer. Officer Kokot stated that he was told by Lieutenant Maldonado and Lieutenant Slivko that Medina was transferred because he was a candidate for committeeman.[5] (See Kokot Dep. p. 8). Furthermore, the temporal

---

**5.** The Defendants have not raised a specific objection to this testimony. (See Reply Memorandum of Defendant City of East Chicago. A2–A3). Certainly, this evidence may not be used to prove the truth of the matter asserted. However this evidence is admissible to demonstrate that the statement was made. *Smith*

*v. Great American Restaurants, Inc.*, 969 F.2d 430, 437 (7th Cir.1992), (The court noted that the testimony was offered not to prove the truth of the matters asserted but merely to show consistency in Smith's account of events and to explain why certain of the defendant's other employees resigned.).

proximity between Medina's filing to run for precinct committeeman and his transfer constitutes some circumstantial evidence of an improper motive. *Lalvani v. Cook County,* 269 F.3d 785, 790 (7th Cir. 2001); *Hoffman–Dombrowski v. Arlington Int'l Racecourse, Inc.,* 254 F.3d 644, 651 (7th Cir.2001). In light of this evidence the court finds that summary judgment with respect to Medina's claim against Alcala in his individual capacity and the City of East Chicago is **DENIED.**

### b. ANGELO MACHUCA

Machuca has not come forward with any admissible evidence that he was treated adversely by any of the Plaintiffs in any way because of his protected constitutional rights after 1998.[6] Machuca admitted during his deposition testimony that there has never been a time since 1998 that he was treated less favorably by Alcala for supporting Medina. (Machuca Dep. p. 21). Therefore his claims against Alcala and the City of East Chicago fail as a matter of law.

### c. JOHN NAVA

■ Nava asserts that he was demoted from his detective position to a patrolman position because he supported Medina and did not support Alcala and Pastrick's agenda. (Nava Dep. pp. 6–9). In support of this allegation, Medina cites to a statement that Lieutenant Edmonds made to him that "they're trying to burn you." (Nava Dep. p. 36). It must first be noted that this court does not sit as a super-personnel department and will not second guess an employer's legitimate decisions; this court's only concern is whether the em-

ployer's proffered reason for its actions was honest. *O'Regan v. Arbitration Forums, Inc.,* 246 F.3d 975, 984 (7th Cir. 2001). Here Nava has failed to demonstrate that his political affiliation or his non-political affiliation as the case may be, played any role in his demotion or failure to be promoted. First, a careful review of the record demonstrates that Nava actually supported Pastrick. (Nava Dep. p. 20). Furthermore, Nava admitted that he did not feel threatened by not actively following the administration's agenda. (Nava Dep. p. 24). Alcala testified during his deposition that Nava was transferred from his position because he "was not doing his job." (Alcala Dep. p. 235). Alcala further noted that Nava was not promoted because he was deficient in the following areas: 1) not following up on cases; 2) doing only enough to get by; 3) not taking his work seriously; 4) not appearing in court when subpoenaed; 5) not returning victim's phone calls; 6) lack of leadership abilities; 7) calling off work regularly; 8) disrespectful to supervisors. (Alcala Dep. pp. 119–121; Samuels Dep. pp. 30–34; Ramos Dep. pp. 116–118; Chavarria Dep. pp. 66–70). Nava does not respond to these legitimate reasons put forth by Pastrick and Alcala in their motions for summary judgment.

Further Nava has no specific knowledge that he was either reassigned/transferred or not promoted because of his political affiliation. Most importantly, Pastrick, Alcala and other members of the screening board testified that they were not aware of the political affiliations of Nava. (Pastrick Dep p. 47; Alcala Dep. pp. 142–43; Ramos Dep. pp. 183; Chavarria Dep. pp. 89).

---

6. During the Summer of 1995, Machuca contends that he went from working straight days to working Tuesday to Saturday from 6:00 p.m. to 2:00 a.m. (Machuca Dep. p. 15). Machuca contends that Maldonado told him that he received the reassignment because of his involvement in Medina's campaign. (Machu-

ca Dep. p. 18). However, this claim of unfair treatment does not coincide with Medina's initial campaign for precinct committeeman which is the basis for the complaint. (See Compl. at ¶ 6). Further, any claim prior to 1998 would be barred by the statute of limitations.

Nava's personal belief or theories concerning the way promotions or other employment decisions are made within the ECPD are insufficient to defeat summary judgment. The vague statement that was given by Lieutenant Edmonds that "they're trying to burn you," lacks any foundation to withstand summary judgment. *Stagman v. Ryan,* 176 F.3d 986, 996 (7th Cir. 1999). An appeal process to the Safety Board existed but was not utilized by Nava. Nava has failed to demonstrate a genuine issue of material fact that exists with respect to his alleged claims and therefore summary judgment is appropriate as to all of his claims against Alcala and the city of East Chicago.

### d. NICHOLAS KOKOT

■ The court initially notes that neither Kokot's political affiliation nor the exercise of his First Amendment rights were a motivating factor in the Defendants' decision not to promote him in January 2000. Kokot did not meet the five year requirement to be considered for promotion as required under the Rules and Regulations of the ECPD. Therefore, his contention that he was not promoted on the basis of a constitutionally protected conduct is without merit. The court now turns to whether Kokot was treated adversely by the Defendants because of any other constitutionally protected conduct.

■ Kokot further contends that he was assigned to certain areas as a form of punishment for supporting Medina. (Kokot Dep. pp. 13, 18, 21–23). Furthermore, Kokot contends that he was punished for speaking out about misconduct on the department. (Kokot Dep. pp. 37–38, 43; Plaintiff's Exhibit EE). The court finds that the claims that Kokot was punished by being assigned to other areas because of either his support for Medina or for speaking out to be completely deficient in merit.

Initially, Kokot has failed to demonstrate that he was exercising some form of activity that is protected by the First Amendment. It is unrefuted that any of the alleged decision-makers had any knowledge of Kokot's political involvement. See (Pastrick Dep p. 47; Alcala Dep. pp. 142–43; Ramos Dep. pp. 183; Chavarria Dep. pp. 89). Secondly, Kokot has failed to demonstrate that his comments concerning misconduct within the ECPD rose to the level of a matter of public concern. See *Kuchenreuther v. City of Milwaukee,* 221 F.3d 967, 974–75 (7th Cir.2000). In *Kuchenreuther,* the Seventh Circuit expressed its concern of an influx of judicial oversight if every matter involving the internal operations of a government agency became a matter of public concern. *Id.* at 974. Additionally, *Kuchenreuther* notes that "courts should defer, whenever possible consistent with the Constitution, to the superior expertise of law enforcement professionals in dealing with their respective personnel." *Kuchenreuther,* at 974 citing *Egger v. Phillips,* 710 F.2d 292, 328 (7th Cir.1983) (Coffey, J., concurring in part), overruled on other grounds, *Feit v. Ward,* 886 F.2d 848 (7th Cir.1989); see also *Connick v. Myers,* 461 U.S. 138, 151–52, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) ("When close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate."). The Seventh Circuit determined that the officer's speech only addressed inside matters involving equipment allocation and therefore the speech did not address a matter of public concern. *Id.* at 975.

Here a careful review of the record reveals that the matters complained of by Kokot were not a matter of public concern. Rather, Kokot complained of being reprimanded for ticketing certain individuals, for not having certain types of equipment, and certain officers who had violated vari-

ous rules and regulations. These matters were not addressed in a public forum and dealt primarily with the inner workings of the ECPD. Consequently, Kokot's claims regarding his adverse treatment fail because his speech did not address a matter of public concern.

Even if Kokot were to succeed in showing that his speech touched some matter of public concern he has failed to demonstrate that he was treated adversely or retaliated because of his speech. See *Kuchenreuther*, 221 F.3d at 976. As discussed above, Kokot did not qualify for a promotion. Kokot readily admits that "Every area is just an area. It doesn't matter where they put me." (Kokot Dep. p. 15). Furthermore, Kokot was assigned to detention only sporadically to fill in for the regular officer. Kokot admitted that his temporary assignment to detention was not a form of "punishment." (Kokot Dep. pp. 17–19). Kokot makes additional allegations concerning his unfair treatment and not being given opportunities other officers receive despite his superior record. However, these statements are all self-serving, conclusory, lack foundation and do little to advance an actionable claim on his behalf. Consequently, summary judgment is appropriate as to all of his claims.

### e. MIGUEL SANTOS

■ Initially, the court notes that neither Santos's political affiliation nor the exercise of his First Amendment rights were a motivating factor in the decision not to promote him in January 2000. Santos did not meet the residency requirement to be considered for promotion as required under the Rules and Regulations of the ECPD. (See Santos Dep. p. 8; Alcala Dep. pp. 103, 137) Therefore, his contention that he was not promoted on the basis

of some constitutionally protected conduct is without merit. The court now turns to whether Santos was treated adversely by the Defendants because of any other constitutionally protected conduct.

■ Next, Santos argues that he was unfairly disciplined because he had heavily supported Medina. He also asserts that other officers were not punished for worse conduct. (Santos Dep. pp. 29, 36). Santos cites to one disciplinary proceeding that took place one year after the alleged violation. (Santos Dep. pp. 9–10). However, Santos does not dispute that the underlying act for which he was suspended (an accident involving a police vehicle) did not happen. (Santos Dep. pp. 9–10).[7] Although Santos alleges that other officers were not punished for worse offenses, he provides no details concerning these violations. Furthermore, Santos provides no causal connection between his alleged severe discipline and any constitutionally protected conduct in which he was involved. Much like the other Plaintiff Officers it is based upon his opinion and belief that it must be because of his lack of political involvement in the administration's political agenda. Santos has not come forward with any evidence demonstrating that certain individuals who supported the administration's political agenda committed similar regulation violations and were not punished as severely. See *Craig v. Celeste*, 646 F.Supp. 47, 50–51 (S.D.Ohio 1986) (Republican employee terminated where Democratic employee had only been subjected to five-day suspension for same offense was evidence of disparate treatment based upon political affiliation.). Santos has failed to demonstrate that a genuine issue of fact with respect to his claims against the Defendants. Therefore,

---

**7.** Santos could have appealed his various disciplinary actions to the Safety Board; but refused citing his fear that he could receive more punishment. Nonetheless, Santos had the option to appeal the disciplinary decision to Safety Board.

summary judgment is appropriate as to Santos's claims against all Defendants.

### f. KEVIN HARRETOS

█ Harretos asserts that he was harassed and suspended by Alcala. Harretos alleges that because of his lack of support for the administration's agenda, he was assigned to less desirable tasks despite his seniority and education. Harretos also contends that he was suspended for three months for his refusal to work overtime on one occasion. He contends that other officers also refused to come into work that day and were not suspended.

Harretos has come forward with very little evidence to demonstrate that any action taken by the Defendants was based upon his protected First Amendment rights. He admits that he did support Medina during his 1998 campaign; however he also contends that outside of buying tickets to two different fundraisers and morally supporting Medina that was the extent of his political activities. (Harretos Dep. pp. 6–7). *Nelms v. Modisett*, 153 F.3d 815, 818–19 (7th Cir.1998). Furthermore, it is unrefuted by Harretos that the various alleged decision-makers had any knowledge of Kokot's political involvement. See (Pastrick Dep p. 47; Alcala Dep. pp. 142–43; Ramos Dep. pp. 183; Chavarria Dep. pp. 89). See *Nelms*, at 819–20. (Mere speculation that one was treated adversely because of support of another party, without more, is insufficient to defeat summary judgment, on question of whether a plaintiff has met his burden that adverse treatment was politically motivated.). Finally, Harretos asserts that he was pressured into changing a police report he issued relating to an alleged political ally of the Defendants. (Harretos Dep. pp. 15–16).

Even if Harretos could somehow demonstrate that certain actions were protected, he has failed to demonstrate causal connection between his protected conduct and the alleged adverse treatment and that these actions were not taken for legitimate non political reasons. *Nelms*, 153 F.3d at 820. Harretos could have been fired by the ECPD for refusing a direct order from his supervisor to work overtime. (Ramos Dep. p 141.) Ramos testified that he was not fired because of Alcala. (Ramos Dep. p. 141). Harretos admits that his refusal to obey this order was a violation. (Harretos Dep. p. 15). Furthermore, Harretos has failed to demonstrate that the other officers who refused to work that day were favored because of their political affiliation with Alcala or Pastrick.

Harretos's claims concerning his assignment to less desirable areas are equally without merit. Harretos readily admits that his brief time with the ECPD does not afford him to the choicest of duty assignments. (Harretos Dep. p. 53). Furthermore, Harretos opinions concerning the promotion system within the ECPD are conclusory and self-serving. The screening board gave several legitimate reasons concerning his deficiencies. (Alcala Dep. pp. 122–23; Ramos Dep. pp. 141–48). Therefore, summary judgment is appropriate as to all claims against all parties asserted by Harretos.

### g. DAVID GEMEINHART

Initially, the court notes that neither Gemeinhart's political affiliation nor the exercise of his First Amendment rights were a motivating factor in the decision not to promote him in January 2000. Gemeinhart did not meet the residency requirement to be considered for promotion as required under the Rules and Regulations of the ECPD. (See Gemeinhart Dep. p. 16; Alcala Dep. pp. 103, 137) Therefore, his contention that he was not promoted on the basis of his constitutionally protected conduct is without merit. The court

now turns to whether Gemeinhart was treated adversely by the Defendants because of any other constitutionally protected conduct.

Gemeinhart alleges that he was threatened by Alcala and Lieutenant Slivko because he arrested various individuals associated with the Defendants and for speaking out against the ECPD administration. Gemeinhart asserts that he was transferred to different shifts and placed in detention because of this alleged protected conduct.

Gemeinhart's claims fail for the same reasons that Officer Kokot's claims failed as describe above in Section d. See Discussion of *Kuchenreuther v. City of Milwaukee, supra,* 221 F.3d 967, 974–75 (7th Cir. 2000). Gemeinhart's grievances dealt with the general operation of the police department. These comments were not made as an every day citizen, rather they were made in his capacity as a police officer grumbling about the internal operation of the ECPD. The record does not adequately reveal the type of forum that Gemeinhart chose to air his grievances. See *Colburn v. Trustees of Indiana University,* 973 F.2d 581, 587–88 (7th Cir.1992). Here it is unclear to whom Gemeinhart raised these issues to, but apparently it was raised to his superior officers making it more of an internal disagreement within the ECPD than an issue of public wide concern. Put simply, Gemeinhart has failed to come forward with sufficient evidence to demonstrate that he spoke out on a matter of public concern. See *Michael v. St. Joseph County,* 259 F.3d 842, 846–847 (7th Cir.2001). (insufficient evidence in the record to determine whether plaintiff spoke about a matter of public concern, or whether he spoke as a citizen or as an employee.)

Even if Gemeinhart were to succeed in showing that his speech touched some matter of public concern he has failed to demonstrate that he was treated adversely or retaliated against because of his speech. See *Kuchenreuther,* 221 F.3d at 976. Gemeinhart has failed to come forward with any evidence that he was reassigned because of his alleged protected speech. Rather, he bases this assertion on his unsupported opinion and conjecture. (Gemeinhart Dep. p. 6). Gemeinhart asserts that his placement in detention was a form of punishment, however the record reflects that Gemeinhart actually received higher pay in that position. (Id. p. 12). Gemeinhart further testified that the detention position was a very important position, with a large amount of responsibility. (Id. p. 13). He further concedes that someone must be placed in the detention position. (Id. p. 12). In light of the lack of evidence outside of Gemeinhart's mere conjecture that a causal connection exists between his alleged protected activity and his reassignment to the detention position, this court will not sit as a super-personnel department in questioning the ECPD's placement of Gemeinhart in the detention position. See *Thomsen v. Romeis,* 198 F.3d 1022, 1029(7th Cir.2000). Consequently, summary judgment is appropriate as to all of his claims.

### h. FARD ELLIOT

Initially, the court notes that neither Officer Elliot's political affiliation nor the exercise of his First Amendment rights were a motivating factor in the decision not to promote him in January 2000. Elliot did not meet the residency requirement to be considered for promotion as required under the Rules and Regulations of the ECPD. (See Elliot Dep. p. 20; Alcala Dep. pp. 103, 137) Therefore, his contention that he was not promoted on the basis of a constitutionally protected conduct is without merit. The court now turns to whether Elliot was treated adversely by the Defendants because of any other constitutionally protected conduct.

Additionally, Elliot asserts that he was treated adversely and suspend unfairly by Alcala. However, a careful review of the record demonstrates that Elliot's political affiliation or any other protected First Amendment conduct on his part played no role in these alleged adverse actions. One has to look no further than Elliot's deposition testimony to ascertain that he felt that it was a personal vendetta by Alcala that motivated the alleged adverse treatment. See (Elliot Dep. pp. 6–16). Elliot contends that Alcala had a personal vendetta against him because he interrupted a conversation between Alcala and Pastrick to discuss a shoulder injury and how it would impact his employment. However, an employer's personal animosity toward an employee, alone, cannot be the basis of an actionable 1983 claim. See *Futernick v. Sumpter Township*, 78 F.3d 1051, 1056 n. 7 (6th Cir.), cert. denied, 519 U.S. 928, 117 S.Ct. 296, 136 L.Ed.2d 215 (1996); (suggesting that personal animosity between the parties should not turn an otherwise valid enforcement action into a constitutional violation actionable under 42 U.S.C. § 1983). Furthermore, Elliot has failed to demonstrate, like many of the other Plaintiff Officers, that any of the Defendants had any knowledge of his political leanings or that any decision to suspend him was based upon those leanings. (Pastrick Dep p. 47; Alcala Dep. pp. 142–43; Ramos Dep. pp. 183; Chavarria Dep. pp. 89). Therefore, the Defendants are entitled to summary judgment as to all of the First Amendment claims made by Elliot.

### i. XAVIER HERRERA

Herrera first asserts that he was transferred from accident investigation in June or July of 1998 because he would not support a friend of Alcala. However, again the evidence fails to demonstrate that this decision was based upon Herrera's political affiliations. The alleged friend involved wanted Herrera to administer a sobriety test to another driver involved in an accident, but he refused. Herrera admits that Alcala was upset because the friend threatened to go to the NAACP because Herrera did not test the other driver for alcohol. (Herrera Dep. pp. 7–8). Furthermore, Herrera specifically stated that he did not want to work in the accident investigation section. (Herrera Dep. pp. 6–7). Therefore any claims resulting from this alleged improper transfer must fail.

Herrera next asserts that he was suspended by the ECPD administration for having his tie clipped to the side after rescuing a girl. Herrera has failed to demonstrate how this suspension even remotely bears any relationship to any protected activity. *Nelms v. Modisett*, 153 F.3d 815, 818–19 (7th Cir.1998). Therefore any claim relating to this alleged improper act is without merit.

Finally, Herrera asserts that he was not promoted based upon his political affiliations. Again, Herrera has not provided any evidence which demonstrates any causal link between his political activities and his failure to be promoted. *Nelms*, 153 F.3d at 818–819. Herrera has not put forward evidence that would demonstrate that the any of the Defendants or members of the screening board had knowledge of or took into consideration his political affiliations. (Pastrick Dep p. 47; Alcala Dep. pp. 142–43; Ramos Dep. pp. 183; Chavarria Dep. pp. 89). Rather, the screening board determined that a promotion for Herrera would not be forthcoming due to a number of personal deficiencies as well as a possible ongoing DEA investigation. (Alcala Dep. pp. 107–117).

### E. INDIANA CONSTITUTIONAL CLAIMS

The Plaintiff Officers have also alleged a supplemental state law claim, alleging that

the Defendants violated their rights under the Indiana Constitution. Article I, Section 9, of the Indiana Constitution provides that:

No law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject whatever: but for the abuse of that right, every person shall be responsible.

The Plaintiff Officers have not addressed this issue by offering an analysis of the facts as it relates to each separate parties claims in light of Indiana constitutional law. A review of the state law decisions involving Article I, Section 9 does not reveal the same protections afforded under *Rutan* and similarly decided cases. Thus, these claims are deemed waived. *Bratton v. Roadway Package Sys., Inc.*, 77 F.3d 168, 173, n. 1 (7th Cir.1996) (holding that arguments that are not developed in any "meaningful manner" are waived)

### F. DUE PROCESS CLAIMS

The entirety of the First Amendment has been the subject of the evolutionary judicial selective incorporation into the Fourteenth Amendment making those rights binding on the states. This concept is basic to all of the First Amendment rights asserted. Although there is some mention of possible additional Fourteenth Amendment due process, rights, they are not developed and argued separately. Thus the waiver in *Bratton v. Roadway Package Sys., Inc.*, 77 F.3d 168, 173, n. 1 (7th Cir.1996) applies.

### IV. CONCLUSION

To summarize the court now issues the following with respect to the Defendants' motion for summary judgment:

1) Robert A. Pastrick's motion for summary judgment is **GRANTED** as to all Plaintiffs.

2)(a) Frank Alcala's motion for summary judgment is **GRANTED** as to the following Plaintiffs: David Gemeinhart; Xavier Herrera; John Nava; Kevin Harretos; Fard Elliot; Nicholas Kokot; Miguel Santos and Angelo Machuca.

2)(b) Frank Alcala's motion for summary judgment is **DENIED** as to Plaintiff: Richard Medina.

3) The City of East Chicago's motion for summary judgment is **DENIED** as to Plaintiff: Richard Medina and **GRANTED** as to Plaintiffs: David Gemeinhart; Xavier Herrera; John Nava; Kevin Harretos; Fard Elliot; Nicholas Kokot; Miguel Santos and Angelo Machuca

Each party to bear its own costs. **IT IS SO ORDERED.** This litigation is in the hands of able counsel. Counsel should now engage in deep reality therapy in a face-to-face conference to attempt to resolve the remaining issues here.